Good afternoon, Your Honors. Carolyn Phillips appearing on behalf of the petitioner, Clarence Ramirez, Jr. If it please the Court, this Court had requested briefing on the issue of whether the lineup, the pretrial lineup, was a violation of due process. The facts are fairly simple. The state case from which the petition has arisen was a case involving identity issue, pure and simple. We have three witnesses. The question here is whether or not a pretrial lineup that occurred prior to trial and involved a police officer telling a witness who identified someone other than the petitioner violated due process. What we have is an affidavit that was submitted by the witness following conviction of the petitioner of three counts, one involving an assault with a deadly weapon against the witness who recanted, and also petty theft with a prior and burglary. The thing that bothers me about the recantation is it came after so many statements by the witness that he was sure about the identity. He had several opportunities to reveal any untoward conduct. I think part of those questions could have been answered if we had had an evidentiary hearing at the level of district court when they were reviewing this petition. I agree with you. I think there are some questions that need to be answered. However, I think the validity of the recantation and the method that it was provided, it was in writing, and there doesn't seem to be any connection between the individual, the witness, and Clarence Ramirez, Jr. There doesn't seem to be any intent on the part of this witness to better himself in any way or gain any benefit from recanting his testimony. Frankly, what he has done is set himself up for a perjury charge if, in fact, what he stated in his affidavit was true, that he had, in fact, identified someone other than the petitioner, and then when he was advised that the person who had committed the offense was in a different position in the lineup, he agreed to change his testimony pretty much, and at the time of trial identified the petitioner as the person who had participated in the crime. If we accept the premise that the lineup was tainted, how do you get past the harmless error analysis? Well, I think the Chapman actually applies here. We don't have a situation where the state court has made a ruling on the merits of the petition. We have a situation where actually the district court itself, in reviewing the petition, applied the Chapman harmless error beyond a reasonable doubt. Obviously, we disagree with the result of that, but what we have is a situation where there's been no findings by the state court whether or not the merits of the claim that the live lineup was a violation of due process, if they're valid or not. We don't have any discussion about that. What we do have is the state court making a decision that the claim should be denied purely, and I should say mostly on a procedural ground. The petitioner, Clarence Ramirez, filed the petition improper and did not attach the trial transcripts, and on that basis the court denied the petition. It went up to the California Supreme Court, who denied without any comment. So I think we're left in a situation where the Chapman harmless error rule actually does apply. I think the significance, and I want to ---- Are you saying that the rule does apply, but the error was not harmless? Is that what you're arguing? What I'm arguing is that the state has a burden of showing that this error did not ---- was harmless beyond a reasonable doubt, and I think for a lot of reasons that the state can't show that. What about the other witnesses who were able to identify the defendant? Well, I was going to come to that. What we have is a situation of two shopliftings, basically. There was the shoplifting in November 25th for which Mr. Ramirez was charged and convicted. Eleven days prior to that, there was a similar shoplifting. The trial court allowed testimony regarding that initial, that first shoplifting, 11 days earlier, under Evidence Code 1101, for the purposes of identity and intent. However, on a direct appeal, the Fifth District Court of Appeals said that was error, that it should not have been allowed in for purposes of identity. It could have been allowed in for intent, but the problem with that is that now you have a jury hearing testimony from a witness for purposes of identity when they should not have been hearing that. Secondly, we have a witness coming in testifying falsely about the identity of the person who came in on November 25th. And then we have a third witness who did identify Mr. Ramirez, but the jury does not have the opportunity of balancing the identification by this third witness, Adriana Arevalo, against a contradictory testimony of Renee Torres, who would have, if he had testified truthfully, if he had not been coerced or under duress, told who to identify as the perpetrator. The jury doesn't have all the facts before it. And I think, as I've cited, in Nickerson, which is a case out of the Northern District, when we have the State directing or manipulating witness identification, it's the same thing as asking a witness to testify falsely. Counsel, could we go back to the evidence separate and apart from the tainted evidence in your view? We have a store clerk who was familiar with Mr. Ramirez. She knew him. He had been a regular customer there, and she identified him. Why isn't that sufficient proof of harmless error? Because the jury wasn't allowed an opportunity to hear the testimony of the only other witness, and not only the only other witness to that shoplifting, but to the earlier shoplifting, and couldn't connect the two. He could not identify Mr. Ramirez as the perpetrator. So the jury doesn't have an opportunity to hear the testimony of Renee Torres versus Adriana Alvaro. The jury should have had that opportunity to weigh the credibility of those witnesses to make a determination. They weren't given that opportunity. As a defense, obviously, the defense was that this person, Clarence Ramirez, was not the perpetrator of the crime. So identity was very critical. If the defense had known, and if, in fact, the police officer at the time of the line-out had not directed Renee Torres who to choose, then the defense could have presented Renee Torres at the time of trial to come in and say, I don't know. I can't identify this person. I was standing six feet away from him. I can't identify the petitioner, Mr. Ramirez, as the perpetrator of the crime. Wasn't there another witness, Veronica Torres? She was not a witness to the 1125. That was the earlier instance? Yes, that was the earlier one where the trial court erred in allowing that testimony, her testimony, as to identity. That should never have occurred. Because I understand that this is not a case where you were, where the line-up was suggestive or anything like that. No. The only, it has to do, your petition has to do with the manner in which it was, the witness may have been directed to a particular suspect. Exactly. And what is our closest case authority that invalidates a trial on the basis of that kind of? Well, I cited the Nickerson case, which, again, is out of the Northern District. Well, that's what I was wondering. Have we, has this Court gone down that line, down that road yet of looking not just at the suggestiveness, but the conduct of the police who are conducting it as well? I certainly think it would be appropriate for the Court to do that because we have, I have read many cases about tainted line-ups, and you're right. Most of those cases have to do with the manner in which those line-ups are presented. Right. And where you have tangible evidence of everybody can look for themselves. Exactly. Here we have a he says, she says kind of situation. Right. And in order, I believe, to preserve the sanctity of the criminal justice system, that at the least we should have an evidentiary hearing regarding the validity of the recantation. Because at this point, we have a witness who's come forward on his own and said, this is what happened at the line-up. And, frankly, given the serious nature of the consequences that Mr. Ramirez is now 31 years to life sitting in State prison, I think it would behoove the Court to look at this and say, of course, this was a violation of due process. He stole a carton of cigarettes? Pardon me? What was the crime that he's in prison for life? Well, he was charged with four offenses, three of which he was convicted for. Assault with a deadly weapon against the witness who can't, who now has recanted. Petty theft with prior and burglary. Okay. Thank you. You have Easter time. Good afternoon, Your Honor. My name is Bruce Pennington on behalf of Appellee. Your Honor, first let me address the issue that counsel raised regarding whether or not there was a merits-based decision in this case. And before I do that, I should say that this case was filed after the AEDPA was put into place and is subject to the AEDPA deference standard. There was a merits-based decision in this case. Procedurally what happened, after the superior court issued its written decision relating to the habeas petition, the case was then filed in both the appellate district and the California Supreme Court. After the written decision was issued by the trial court, by the superior court, appellant amended his petition and added what he referred to as a supplemental writ. And in that supplemental writ, he addressed directly the ---- Excuse me. Could the clerk please reset the time? Sorry. Thank you, Your Honor. In the supplemental writ that the appellant filed in the California Supreme Court, he directly addressed the issues raised in the written decision by the superior court. In addition to that, he attached to his California Supreme Court petition the transcripts from the reporter's transcripts that the trial court, or the superior court rather, said were missing from the initial petition. As such, the petition that was before the California Supreme Court was significantly different than the petition that was before the superior court. And the California Supreme Court's silent denial of that petition was a merits-based decision. So the procedural count ---- Counsel, how can that be? We're supposed to look back to the last written decision. Well, Your Honor, the fact that the California Supreme Court decision was different than the trial court decision means you don't look back through it. Because in ---- It's not reasoned. We have to look at a reasoned decision. If it's a postcard denial, our case law says that's not a reasoned decision, and we don't look to that. Well, but the facts in before the California Supreme Court, namely the supplemental writ filed by the petitioner in response to the last reasoned decision issued by the superior court, augmented the petition before the California Supreme Court. They were ruling on a totally different petition. And what's your best case authority, then, for the proposition that if there is a supplemental brief filed before the Supreme Court, then that decision becomes a reasoned decision for purposes of habeas? I don't have a case before me on that, Your Honor. But you're asking us to make that the law? Well, I'd be glad to research it and provide authority. Is that the argument, though? Isn't that the argument you're making? My argument is, is that it's a different petition. Just factually, it is a different petition, not legally. Factually. What are we supposed to review, then? I'm sorry? What are we to review in terms of the ruling on that decision? How are we to review that ruling? The California Supreme Court denial should be treated as a silent denial, and thus this Court should conduct review under Delgado v. Lewis to see whether that silent denial is a legitimate or deliberate decision. That's the whole theory. But at any rate, Your Honor, I believe that the record would support that there was a merits-based decision. And if Your Honor does feel that the superior court decision was the appropriate one to look through, too. Does it make any difference, really, as far as you? Well, if you consider that the trial court, the superior court decision, was a merits-based decision, which clearly, when you look at it, is reasoned, the court goes through its analysis and finds that the validity of the affidavit submitted is in question and, based on that, denies the petition. It then goes on to say, in addition, he didn't attach the transcripts in support of his petition. But just because the superior court makes that alternate ruling does not mean that it didn't first, on the merits, deny the petition. But under either situation, when this Court reviews it, the appropriate harmless error standard to apply would be Brecht rather than the Chapman. Why is that? Because that's the appropriate standard that applies on collateral review. So when would Chapman apply? Never? Well, Chapman may apply, for example, if the California Supreme Court issued a written more than a silent denial, and the California Supreme Court, in their analysis, denying a petition, did an analysis under Chapman, then it would perhaps, in that situation, be appropriate for this Court to apply the Chapman test to that denial. But when one looks at the facts in this case, in considering a harmless error analysis and keeping in mind that the district court did erroneously, in my opinion, review the harmless error analysis under the Chapman standard, the more stringent Chapman standard, and came to the conclusion that it was harmless error under that standard as well, and the facts in this case, quite simply, are extremely strong when it comes to the identification evidence. Adriana Arvalo, who was the store clerk inside, had known the defendant for two or three years, had seen him at a prior incident that counsel referenced, saw the appellant before he even got into the store, because she had been warned to watch out for him, watched him go to the cigarette counter, take out the cigarettes, walk outside, have a confrontation with a customer. She got within two feet of him. She then saw him go out, have the confrontation with Mr. Torres, get into the car and drive off. She then identified, gave a description to the police 15 to 20 minutes later, identified him the next day in a photographic line-up. And I think it's significant to note that Mr. Torres also identified the appellant in a photographic line-up the day after the incident, and he is not recanting that identification. He is only recanting the identification procedures that took place at the physical line-up. Nor is he recanting his in-court identification. Ms. Torres, after identifying him in the photo line-up, seven months later at the physical line-up, Ms. Arvalo identifies him at that line-up as well as, obviously, Mr. Torres. Any questions? It doesn't appear to be any. Okay. Thank you, Your Honor. All right.       Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Pardon me? Do you have some of your – you have used all your time. Do you wish to call a time to our attention? Oh, I used all my time. Okay. I was just going to point out to the Court that while there may not have been a recantation of the photo line-up, the fact is that the transcripts will support the fact that Mr. Torres was never positive about the identification that he made. Yes. Thank you. Thank you. The case just argued is submitted for decision. The next case, United States v. Alcáraz-Chavez. Alcáraz-Chavez. END
judges: Schroeder, Tashima Rawlinson